## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### Eastern Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **KAJAL TAYLOR** *aka* **KAJAL PATEL** | ) | **Case No. 22-43617-169** |
| | ) | |
| Debtor. | ) | **Chapter 13** |
| | ) | |
| **PENNYMAC LOAN SERVICES, LLC** | ) | |
| | ) | |
| Movant, | ) | **DOCKET NO. _____** |
| v. | ) | |
| **KAJAL TAYLOR** *aka* **KAJAL PATEL** | ) | |
| **DOUGLAS TAYLOR, JR.** | ) | |
| **ESTATE OF BARBARA TAYLOR** | ) | |
| **ESTATE OF DOUGLAS TAYLOR SR.** | ) | |
| | ) | |
| Respondents. | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND CO-DEBTOR STAY, OR IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION AND MEMORANDUM IN SUPPORT THEREOF

**COMES NOW**, PennyMac Loan Services, LLC and its subsidiaries, affiliates, predecessors in interest, successors or assigns ("Movant") by and through its attorneys, Melinda J. Maune and Amy Tucker Ryan, and the law firm of Armstrong Teasdale LLP, Movant respectfully moves for relief from the automatic stay and co-debtor stay or, in the alternative, motion for adequate protection, and states as follows:

1.  On or about September 30, 2015, Barbara Taylor and Douglas Taylor Sr. ("Co-Debtors") executed and delivered to DAS Acquisition Company, LLC, a Limited Liability Company a Note ("Note") in the original principal amount of $116,353.00. A true and correct copy of the Note is attached hereto as Exhibit "A" and incorporated herein by this reference.

2.  The Note is secured by a Deed of Trust dated September 30, 2015, recorded on October 1, 2015, in Book 21704 at Page 3895, executed and delivered by Co-Debtors for the benefit of Mortgage Electronic Registration Systems, Inc., as Beneficiary, as nominee for DAS Acquisition Company, LLC, a Limited Liability Company, its successors and assigns, covering the following property:

LOT 7 OF KUHS ACRES, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 41 PAGE 32 OF THE ST. LOUIS COUNTY, RECORDS.

The above-described property is also known as 13034 Spanish Pond Rd., Saint Louis, Missouri 63138 ("Property"). A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B" and incorporated herein by reference.

3.     Movant is now the holder of the Note and Deed of Trust. A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit "C" and incorporated herein by reference. Movant asserts it has the right to foreclose should stay relief be obtained.

4.     Upon information and belief, the Co-Debtors and obligors on the Note, Barbara and Douglas Taylor, Sr. are deceased. Per Schedule D, Debtor states she acquired the real property via beneficiary deed with Douglas Taylor.

5.     Debtor filed for relief under Chapter 13 of the United States Bankruptcy Code on November 17, 2022.

6.     Debtor's Chapter 13 plan provides for direct payments. The account is past due to Movant for the months of December 2022 through April 2023, causing a post-petition payment arrearage in the amount of $4,797.25. Said sum represents:

| | | |
|---|---|---|
| 1. | 5 payments (12/2022-4/2023) @ $976.85 each | $4,884.25 |
| 2. | Movant's recoverable attorney fees ($700.00) and costs ($188.00) | $888.00 |
| 3. | Less suspense | $(975.00) |

Thus, for "cause" relief from the automatic stay is appropriate and should be granted. A true and correct copy of the Post-Petition Payment History is attached hereto as Exhibit "D" and incorporated herein by reference.

7.     The principal balance of this Note is $104,639.88. The payoff amount as of May 3, 2023 is $126,163.72.

8.     Movant lacks adequate protection of its interest in the property described in Paragraph 2 above.  11 U.S.C. § 362 (d) (1).

9.     Movant requests relief from co-debtor stay under 11 U.S.C. §1301.  Under 11 U.S.C. §1301(c)(3), Movant's interest will be irreparably harmed by continuation of stay.

10.     Upon information and belief, Debtor has little or no equity in the Property for the benefit of the bankruptcy estate and said Property is not necessary for an effective reorganization. 11 U.S.C. §362(d)(2)(A) and §362(d)(2)(B).

11.     Movant requests that any order modifying the stay be effective immediately as allowed under Federal Bankruptcy Rule 4001(a)(3).

**WHEREFORE**, for the foregoing reasons, Movant prays that this Court enter an Order granting relief from the automatic stay and co-debtor stay to enable Movant to exercise any and all rights provided under non-bankruptcy law and as set forth in the Note and Deed of Trust granting it an interest in said property, including but not limited to foreclosure of the Property, to pursue a short sale, deed in lieu of foreclosure or other foreclosure alternatives, to exercise its rights under state law to obtain possession of the property, or in the alternative that this Court direct Debtor to provide adequate protection to Movant consistent with the terms of the confirmed plan, that any order modifying the stay be effective immediately as allowed under Fed. Rule Bankr. P. 4001(a)(3), and for such other and further relief as is just and appropriate under the circumstances.

Respectfully submitted,

ARMSTRONG TEASDALE LLP

*/s/ Melinda J. Maune*
Melinda J. Maune, #49797MO, mmaune@atllp.com
Amy Tucker Ryan, #49047MO, atryan@atllp.com
7700 Forsyth Blvd, Ste. 1800
St. Louis, Missouri 63105
Phone: (314) 621-5070
Fax: (314) 621-5065
ATTORNEYS FOR MOVANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was filed electronically on the 19th day of April, 2023, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on the 19th day of April, 2023:

Kajal Taylor
13034 Spanish Pond Road
Saint Louis, MO 63138

Douglas Taylor, Jr.
13034 Spanish Pond Road
St Louis, MO  63138

Estate of Barbara Taylor
Estate of Douglas Taylor, Sr.
13034 Spanish Pond Rd.
St Louis, MO 63138

/s/ Melinda J. Maune
Melinda J. Maune, Attorney for Movant

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**Eastern Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **KAJAL TAYLOR** *aka* **KAJAL PATEL** | ) | Case No. 22-43617-169 |
| | ) | |
| Debtor. | ) | **Chapter 13** |
| | ) | |
| **PENNYMAC LOAN SERVICES, LLC** | ) | |
| | ) | |
| Movant, | ) | **DOCKET NO. _____** |
| v. | ) | |
| **KAJAL TAYLOR** *aka* **KAJAL PATEL** | ) | |
| **DOUGLAS TAYLOR, JR.** | ) | |
| **ESTATE OF BARBARA TAYLOR** | ) | |
| **ESTATE OF DOUGLAS TAYLOR SR.** | ) | |
| | ) | |
| Respondents. | ) | |

## SUMMARY OF EXHIBITS

The following exhibits in reference to the Motion for Relief from Automatic Stay and Co-Debtor Stay are available upon request:

    A.    Note

    B.    Deed of Trust

    C.    Assignment of Deed of Trust

    D.    Post-Petition Payment History

        Respectfully submitted,

        ARMSTRONG TEASDALE LLP

        */s/ Melinda J. Maune*
        Melinda J. Maune, #49797MO, mmaune@atllp.com
        Amy Tucker Ryan, #49047MO, atryan@atllp.com
        7700 Forsyth Blvd, Ste. 1800
        St. Louis, Missouri 63105
        Phone: (314) 621-5070
        Fax: (314) 621-5065
        ATTORNEYS FOR MOVANT

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was filed electronically on the 19th day of April, 2023, with the United States Bankruptcy Court, and has been served on the parties in interest via e-mail by the Court's CM/ECF System as listed on the Court's Electronic Mail Notice List.

I certify that a true and correct copy of the foregoing document was filed electronically with the United States Bankruptcy Court, and has been served by Regular United States Mail Service, first class, postage fully pre-paid, addressed to the parties listed below on the 19th day of April, 2023:

Kajal Taylor
13034 Spanish Pond Road
Saint Louis, MO 63138

Douglas Taylor, Jr.
13034 Spanish Pond Road
St Louis, MO  63138

Estate of Barbara Taylor
Estate of Douglas Taylor, Sr.
13034 Spanish Pond Rd.
St Louis, MO 63138

/s/ Melinda J. Maune
Melinda J. Maune, Attorney for Movant

Taylor

EXHIBIT

A

LOAN #: ██████████

MIN: ██████████

FHA Case No.
████████████

# NOTE

Missouri

September 30, 2015                Saint Louis,                        Missouri
**[Date]**                              **[City]**                              **[State]**

13034 Spanish Pond Rd., Saint Louis, MO 63138
**[Property Address]**

1. **PARTIES**
   "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **DAS Acquisition Company, LLC, a Limited Liability Company**

and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**
   In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED SIXTEEN THOUSAND THREE HUNDRED FIFTY THREE AND NO/100*********************** Dollars** (U.S. **$116,353.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND ONE-EIGHTH** percent ( **4.125 %** ) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
   **(A) Time**
   Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **November 1, 2015.** Any principal and interest remaining on the **1st** day of **October, 2045** will be due on that date, which is called the "Maturity Date."
   **(B) Place**
   Payment shall be made at **12140 Woodcrest Executive, Ste 150**
   **St. Louis, MO 63141**

or at such place as Lender may designate in writing by notice to Borrower.
   **(C) Amount**
   Each monthly payment of principal and interest will be in the amount of U.S. **$563.90.** This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
   **(D) Allonge to this Note for payment adjustments**
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
   **[Check applicable box]**   ☐ Graduated Payment Allonge      ☐ Growing Equity Allonge
                              ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**
   Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.
   Borrower may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Lender will use the Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Lender may apply the Prepayment to any accrued and unpaid interest on the Prepayment amount before applying the Prepayment to reduce the Principal amount of the Note. If Borrower makes a partial Prepayment, there will be no changes in the due date or in the amount of the monthly payment unless the Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**
   **(A) Late Charge for Overdue Payments**
   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000 %** ) of the overdue amount of each payment.

FHA Missouri Fixed Rate Note - 10/95
Ellie Mae, Inc.                                Page 1 of 3                              MO8700NT  1214
                                                                                        MO8700NT

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

"Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it." [MO Rev Stat 432.045(3)(1).]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Douglas Taylor SR_ _____ (Seal)
DOUGLAS TAYLOR SR.

_Barbara Taylor_ _____ (Seal)
BARBARA TAYLOR

Lender: DAS Acquisition Company, LLC
NMLS ID: ▮▮▮▮
Loan Originator: James C Gardner
NMLS ID: ▮▮▮▮

PAY TO THE ORDER OF:
WITHOUT RECOURSE
DAS Acquisition Company, LLC, a Limited Liability Company


BY: _____
Jayne Siebert, Assistant Vice President
-OR-


BY: _____
Danielle Ploch, Assistant Vice President

# ALLONGE TO NOTE

LOAN #: ██████████

LOAN AMOUNT: 116,353.00

PROPERTY ADDRESS:    13034 Spanish Pond Rd.

Saint Louis  MO  63138

ALLONGE TO NOTE DATED: 09/30/2015

IN FAVOR OF: **DAS Acquisition Company, LLC, a Limited Liability Company**

AND EXECUTED BY:    Douglas  Taylor Sr.

Barbara  Taylor

PAY TO THE ORDER OF:  PLAZA HOME MORTGAGE, INC.

WITHOUT RECOURSE: DAS Acquisition Company, LLC, a Limited Liability Company

BY    _Jayne Siebert_

Jayne Siebert

TITLE: Assistant Vice President

OR

BY    _____

Danielle Ploch

TITLE: Assistant Vice President



# Note Allonge

| | |
|---|---|
| **Borrower:** | DOUGLAS TAYLOR |
| **Loan #** | ███████ |
| **Loan Amount:** | $116,353.00 |
| **Note Date:** | 9/30/2013 |
| **Property Address:** | 13034 SPANISH POND ROAD, SAINT LOUIS, MO, 63138 |

Pay to the order of:

PennyMac Loan Services, LLC

Without Recourse:
**Plaza Home Mortgage, Inc.**

Greg Watson

Shipping Manager

# Book:21704 - Page:3895





* 2 0 1 5 1 0 0 1 0 0 7 9 6 *

**GERALD E. SMITH, RECORDER OF DEEDS**
**ST. LOUIS COUNTY MISSOURI**
**41 SOUTH CENTRAL, CLAYTON, MO 63105**

| | | | |
|---|---|---|---|
| TYPE OF INSTRUMENT **DT** | GRANTOR **TAYLOR DOUGLAS SR ETUX** | TO | GRANTEE **DAS ACQUISITION CO LLC** |

**EXHIBIT B**

PROPERTY DESCRIPTION: **KUHS ACRES L: 7 PB: 41 PG: 32**

| Lien Number | Notation | Locator |
|---|---|---|
| | | |

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected** is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, **the ATTACHED DOCUMENT governs.** Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

**STATE OF MISSOURI** )
             SS.
**COUNTY OF ST. LOUIS** )

**Document Number**
**00796**

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of _____**10**_____ pages, (this page inclusive), was filed for record in my office on the ___**1**___ day of ____**October**____ ___**2015**___ at __**04:16PM**__ and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

**ER**
Deputy Recorder



*Gerald E. Smith*
Recorder of Deeds
St. Louis County, Missouri

Mail to:

US Title - North County
2408 N. Highway 67
Florissant, MO 63033

Destination code: **4002**

RECORDING FEE _____**48.00**_____
(Paid at the time of Recording)

# E-RECORDED

simplifile*

ID: _____

County: _____

Date: _____ Time: _____

-------------------- Space above this line for recording data --------------------

$\mathcal{U}ST$

**When recorded, return to:**
**DAS Acquisition Company, LLC**
**12140 Woodcrest Executive, Ste 150**
**St. Louis, MO 63141**
**314-628-2214**

**LOAN #:** ▮▮▮▮▮▮▮▮

# DEED OF TRUST COVER PAGE
## For Recorder of Deeds Indexing Purposes

This Cover Page **MUST** be attached with your recordable document

1. Document Being Recorded: Deed of Trust
2. Date of Document: **September 30, 2015**
3. Grantor/Borrower Name(s) for Indexing Purposes: **DOUGLAS TAYLOR SR. AND BARBARA TAYLOR, HUSBAND AND WIFE.**

4. Grantee/Lender Name and Address for Indexing Purposes: **DAS Acquisition Company, LLC**
   **12140 Woodcrest Executive, Ste 150**
   **St. Louis, MO 63141**

5. Legal Description or Location of Legal Description in the Document:
   **Lot 7 of Kuhs Acres, according to plat thereof recorded in Plat Book 41 page 32 pf the St Louis County Records.**
   **APN #:** ▮▮▮▮▮▮▮

6. Reference Book(s) and Page(s), if required: **N/A**

Missouri Recording Cover Page
Ellie Mae, Inc.

MOCOVERL 0315
MOCOVERL



—————————————————[Space Above This Line For Recording Data]—————————————————

| Title Order No.: ███████ | **LOAN #:** ████████ |
|---|---|
| **State of Missouri** | **DEED OF TRUST** |

FHA Case No.
████████████

**MIN:** ████████
**MERS PHONE #: 1-888-679-6377**

THIS DEED OF TRUST ("Security Instrument") is made on **September 30, 2015.** The Grantor is **DOUGLAS TAYLOR SR. AND BARBARA TAYLOR, HUSBAND AND WIFE**

("Borrower").

The trustee is **Loretta J. Pike, An Individual, 12140 Woodcrest Executive Drive, Ste 150, St. Louis, MO 63141**

("Trustee").

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**DAS Acquisition Company, LLC, a Limited Liability Company,**

("Lender") is organized and existing under the laws of **Missouri,**
and has an address of **12140 Woodcrest Executive, Ste 150, St. Louis, MO 63141**

Borrower owes Lender the principal sum of **ONE HUNDRED SIXTEEN THOUSAND THREE HUNDRED FIFTY THREE AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$116,353.00** ).

**LOAN #:** ███████

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **October 1, 2045.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in **St. Louis** County, Missouri:

**Lot 7 of Kuhs Acres, according to plat thereof recorded in Plat Book 41 page 32 pf the St Louis County Records.**
**APN #** ███████

which has the address of **13034 Spanish Pond Rd., Saint Louis,**

[Street, City],

Missouri **63138** ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents

FHA Missouri Deed of Trust - 4/96
Ellie Mae, Inc.

Page 2 of 8

MOEFHALD 0814
MOEFHALD

on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 **et seq.** and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the deficiency as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.





**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c)



agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled**

FHA Missouri Deed of Trust - 4/96
Ellie Mae, Inc.

MOEFHALD  0814
MOEFHALD



to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Lease of the Property.** Trustee hereby leases the Property to Borrower until this Security Instrument is either satisfied and released or until there is a default under the provisions of this Security Instrument. The Property is leased upon the following terms and conditions: Borrower, and every person claiming an interest in or possessing the Property or any part thereof, shall pay rent during the term of the lease in the amount of one cent per month, payable on demand, and without notice or demand shall and will surrender peaceable possession of the Property to Trustee upon default or to the purchaser of the Property at the foreclosure sale.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Planned Unit Development Rider
☐ Graduated Payment Rider    ☐ Other(s) [specify]

ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.



BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
**DOUGLAS TAYLOR SR.**

_____ (Seal)
**BARBARA TAYLOR**

**STATE OF MISSOURI**                    **SAINT LOUIS COUNTY County ss:**

On this 29th day of Sept in the year 2015 before me, the undersigned notary public, personally appeared DOUGLAS TAYLOR SR. AND BARBARA TAYLOR, HUSBAND AND WIFE, known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

**In witness whereof, I hereunto set my hand and official seal.**

**My Term Expires:** 2-27-17

FRANCES L. CRAIN
My Commission Expires
February 27, 2017
St. Louis County
Commission #13546289

**Notary Public** Frances C. Crain

**Lender: DAS Acquisition Company, LLC**
**NMLS ID: 227262**
**Loan Originator: James C Gardner**
**NMLS ID: 237661**

# Book:23256 - Page:1935





*2018102600380*

GERALD E. SMITH, RECORDER OF DEEDS
ST. LOUIS COUNTY MISSOURI
41 SOUTH CENTRAL, CLAYTON, MO 63105

EXHIBIT C

| | | | |
|---|---|---|---|
| TYPE OF INSTRUMENT | GRANTOR | TO | GRANTEE |
| **ASGMT** | **DAS ACQUISITION COMPANY LLC ETAL** | | **PENNYMAC LOAN SERVS LLC** |

PROPERTY DESCRIPTION: **KUHS ACRES L: 7 PB: 41 PG: 32**

| Lien Number | Notation | Locator |
|---|---|---|
| | | |

NOTE: I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certification Sheet as to **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE as well as the DESCRIPTION of the REAL PROPERTY affected** is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, **the ATTACHED DOCUMENT governs.** Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the **BOOK** and **PAGE** of the recorded Document is taken from this CERTIFICATION SHEET.

## RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI )
              SS.
COUNTY OF ST. LOUIS )

**Document Number**
**00380**

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of _____**4**_____ pages, (this page inclusive), was filed for record in my office on the ___**26**___ day of _____**October**_____ ___**2018**__ at __**01:51PM**__ and is truly recorded in the book and at the page number printed above.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

**MM**
Deputy Recorder



*Gerald E. Smith*
Recorder of Deeds
St. Louis County, Missouri

Mail to:

**Martin Leigh PC - Kansas City**
**1044 Main Street Suite 900**
**Kansas City, MO 64105**

Destination code: **4002**

RECORDING FEE ____**30.00**____
(Paid at the time of Recording)

TITLE                                ASSIGNMENT OF DEED OF TRUST

DATE:                                24 Day of October , 2018

GRANTOR(S):                          Mortgage Electronic Registration Systems, Inc., as
                                     nominee for DAS Acquisition Company, LLC, its
                                     successors and assigns

GRANTOR(S) ADDRESS:                  P.O. Box 2026, Flint, MI 48501-2026

GRANTEE(S):                          PennyMac Loan Services, LLC

GRANTEE(S) ADDRESS:                  3043 Townsgate Road #200, Westlake Village, CA 91361

LEGAL DESCRIPTION:                   LOT 7 OF KUHS ACRES, ACCORDING TO THE
                                     PLAT THEREOF RECORDED IN PLAT BOOK 41
                                     PAGE 32 OF THE ST LOUIS COUNTY RECORDS.

REFERENCE BOOK & PAGE                Deed of Trust dated September 30, 2015, and recorded on
(DOCUMENT) NUMBER:                   October 1, 2015, in Book 21704, Page 3895

                                     **MARTIN LEIGH PC**
                                     **1044 MAIN STREET, SUITE 900**
                                     **KANSAS CITY, MO 64105-2135**

**MERS Identification No.**
**MERS Telephone Number: 1-888-679-6377**

(Taylor 8089.232)/ßK

## ASSIGNMENT OF DEED OF TRUST
(Without Recourse or Warranty)

KNOW ALL MEN BY THESE PRESENTS, that, for $10.00 and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged by the parties, the undersigned **Mortgage Electronic Registration Systems, Inc., as nominee for DAS Acquisition Company, LLC, its successors and assigns** ("Grantor") and as Mortgagee as defined in the Deed of Trust described below ("Deed of Trust") and on behalf of and for the Lender identified in the Deed of Trust ("Lender") and pursuant to the powers and authority granted to the Mortgagee by the Borrower in and to the Deed of Trust, whose address is P.O. Box 2026, Flint, MI 48501-2026, acknowledges that all of its interest in and to the Deed of Trust was transferred to the Grantee, as defined herein, on a date prior to , and consistent with and to confirm said transfer, the Grantor, does hereby convey, grant, transfer, assign and quit claim all of its and Lender's rights, title and interest in and to herein described Deed of Trust which encumbers the real property described herein, by the Deed of Trust, together with all interest, liens and any rights due or to become due thereon to **PennyMac Loan Services, LLC** ("Grantee") whose address is 3043 Townsgate Road #200, Westlake Village, CA 91361.

| Deed of Trust recorded on: | Deed of Trust dated September 30, 2015, and recorded on October 1, 2015, in Book 21704, Page 3895 |
| --- | --- |
| Records of (County): | St. Louis County |
| Original Mortgagee: | Mortgage Electronic Registration Systems, Inc., as nominee for DAS Acquisition Company, LLC, its successors and assigns |
| Original Mortgagor(s): | Douglas Taylor Sr. and Barbara Taylor, Husband and Wife |
| Property Address: | 13034 Spanish Pond Rd., Saint Louis, Missouri 63138 |
| Legally described as : | LOT 7 OF KUHS ACRES, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 41 PAGE 32 OF THE ST LOUIS COUNTY RECORDS. |

This assignment is being made without warranty, expressed or implied and without recourse to the Grantor in any event. TO HAVE AND TO HOLD the same unto Grantee, its successors and assigns, forever, subject only to the terms and conditions of the above described deed of trust. IN WITNESS WHEREOF, the undersigned _____Erica Rangel-Baez_____, *Assistant Vice President* of Mortgage Electronic Registration Systems, Inc., as nominee for DAS Acquisition Company, LLC, its successors and assigns (corporation) has caused this instrument to be executed on this 24 day of October , 2018.

(Taylor 8089.232)

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR DAS ACQUISITION COMPANY,
LLC, its successors and assigns

By: _____

Name: _____Erica Rangel-Baez_____

Title: _Assistant Vice President_

> A notary public or other officer completing this certificate verifies only the
> identity of the individual who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ~~CALIFORNIA~~ Texas _ek_ )
                                  ) ss.
COUNTY OF _TARRANT_ )

On _October 24, 2018_, before me, _____Elsie Kroussakis_____, a Notary Public,
personally appeared _____Erica Rangel-Baez_____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

                                                                   Texas _tk_
I certify under PENALTY AND PERJURY under the laws of the State of ~~California~~ that the foregoing
paragraph is true and correct.

Witness my hand and official seal.

ELSIE KROUSSAKIS
Notary Public, State of Texas
Comm. Expires 10-14-2019
Notary ID 1025456

_Elsie Kroussakis_
Notary Public
Name: _____Elsie Kroussakis_____

My commission expires: _10-14-2019_

(Taylor 8089.232)

# Post-Petition Payment History - Exhibit D

| Post Petition Payment Due Date | Date Payment Received | Amount of Payment Due | Amount of Payment Received | Amount Applied to Payment | Ammount Applied/Removed from Suspense | Suspense Balance |
|---|---|---|---|---|---|---|
| | 1/24/2023 | | $975.00 | | $975.00 | $975.00 |
| 12/1/2022 | | $976.85 | | | $0.00 | $975.00 |
| 1/1/2023 | | $976.85 | | | $0.00 | $975.00 |
| 2/1/2023 | | $976.85 | | | $0.00 | $975.00 |
| 3/1/2023 | | $976.85 | | | $0.00 | $975.00 |
| 4/1/2023 | | $976.85 | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | $0.00 | $975.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |